ILLINOIS BELL TELEPHONE COMPANY, Petitioner-Appellant, v. ILLINOIS COMMERCE COMMISSION *et al.*, Appellees (The People of Cook County *ex rel.* Jack O'Malley, *et al.*, Respondents).

Third District   No. 3—96—0555

Opinion filed February 6, 1997.

Edward A. Butts (argued) and Paul T. Dahlquist, and Louise A. Sunderland and Lincoln Janus, both of Illinois Bell Telephone Co., all of Chicago, for petitioner.

James E. Ryan, Attorney General, of Chicago (John P. Kelliher, Assistant Attorney General, of counsel), for respondent Illinois Commerce Commission.

John W. Treece (argued), of Sidley & Austin, of Chicago, for respondent AT&T Communications of Illinois, Inc.

Joan Campion, of Chicago, for respondent MCI Communications Corporation.

Julie E. Grimaldi, of Kansas City, Missouri, for respondent Sprint Communications Company.

JUSTICE BRESLIN delivered the opinion of the court:

Petitioner Illinois Bell Telephone Company (Ameritech) appeals an order of the Illinois Commerce Commission (Commission) that denied its request for compensation for the use of its payphone facilities. Ameritech argues that the Commission erred by denying its complaint for retroactive compensation and by finding that the tariff it filed was void *ab initio*. We hold that Ameritech is entitled to compensation beyond the revenue it received for carrier access services for the period between May 14, 1992, and May 5, 1995, as requested in its complaint. However, we hold that the Commission did not err by finding that the tariff filing procedure is not the proper procedure for obtaining compensation pursuant to section 13—510 of

the Public Utilities Act (220 ILCS 5/13—510 (West 1994)), and the tariff was thus void *ab initio*. Accordingly, we affirm in part, reverse in part and remand.

Ameritech provides pay telephone services to the public. To compensate Ameritech for these services, customers must normally deposit coins into the payphone. However, customers may place "1-800" calls (retail 1-800 calls) without depositing any coins into the payphone. In addition, customers may place "billable operator services calls" without depositing any coins. These calls are made in two different ways: (1) by dialing 0 plus the called number, which results in routing the call to the "presubscribed" operator services provider for the payphone, or (2) by dialing an access code before dialing the called number, which routes the call to the telecommunications carrier of the caller's choice. Billable operator services calls are paid for by charging the call to the caller's home or business telephone number, a calling card, the called party or a third-party number. When a payphone customer places a retail 1-800 call or a billable operator services call from an Ameritech payphone, the telecommunications carrier that is the operator services provider is the only carrier that receives any direct compensation for the call.

In 1992, the General Assembly enacted section 13—510 of the Public Utilities Act (Act), which provides that telecommunications carriers must pay just and reasonable compensation for the use of a payphone provider's services or facilities. 220 ILCS 5/13—510 (West 1994). Five months after the enactment of this statute, several independent payphone providers (IPPs) filed a complaint with the Commission in which they sought compensation pursuant to the statute. On October 3, 1995, the Commission determined that the IPPs were entitled to 30 cents per call for billable operator services calls and retail 1-800 calls initiated on their payphones. The Commission applied its ruling retroactively by granting the IPPs compensation from the effective date of section 13—510 of the Act.

Ameritech believed that it was not receiving any compensation for the "1-800" calls or billable operator services calls that were made from its payphones but transmitted and billed to customers by other telecommunications carriers. Accordingly, it filed a competitive tariff on April 4, 1995, which took effect on April 5, 1995. Under the tariff, those telecommunications carriers whose services were utilized by customers that placed retail 1-800 calls or billable operator services calls from Ameritech payphones were required to pay Ameritech a use fee of 35 cents per call. One month later, the Commission entered an investigative order to determine the propriety of this tariff. AT&T Communications of Illinois, Inc. (AT&T), MCI Com-

munications Corporation (MCI) and Sprint Communications Company, L.P. (Sprint), intervened in the proceeding. AT&T, MCI and Sprint will be collectively referred to as the long distance companies.

Thereafter, Ameritech filed a separate complaint against the long distance companies seeking just and reasonable compensation for the use of Ameritech's payphones to make billable operator services calls during the period between the effective date of section 13—510 of the Act (May 14, 1992) and the effective date of the tariff (April 5, 1995). The complaint did not request compensation for retail 1-800 calls or intrastate, inter LATA 1+ calls.

The parties presented the written testimony of several witnesses, and hearings were held for cross-examination. The Commission hearing examiner issued a proposed order, which declared Ameritech's tariff void *ab initio* and denied Ameritech's claim for retroactive compensation. Thereafter, the Commission issued an order that declared Ameritech's tariff void, directed Ameritech to refund all sums collected under the tariff, and denied Ameritech's claim for retroactive compensation. However, the order directed Ameritech to file a new tariff at a lower rate. Ameritech responded by filing a motion for clarification and a motion for extension of time to comply with the order. The Commission then withdrew its order and adopted the hearing examiner's proposed order. In addition to finding that Ameritech's payphone tariff was void *ab initio*, the Commission found that Ameritech was already receiving just and reasonable compensation for the use of its payphone facilities and services from the long distance companies. According to the Commission, the source of this compensation was carrier access charges, which are the fees paid by telecommunications carriers to Ameritech for switching and transmitting a call from Ameritech's central office to the telecommunication carrier's network. The Commission denied Ameritech's motion for rehearing and motion for stay, and Ameritech appeals.

The first issue on appeal is whether the Commission erred by determining that revenues received by Ameritech for carrier access charges may be considered compensation for purposes of section 13—510 of the Act.

■ Section 13—510 of the Act provides as follows:

"Any telecommunications carrier using the facilities or services of a payphone provider shall pay the provider just and reasonable compensation for the use of those facilities or services to complete billable operator services calls and for any other use that the Commission determines appropriate consistent with the provisions of this Act. The compensation shall be determined by the Commission subject to the provisions of this Act. This Section

shall not apply to the extent a telecommunications carrier and a payphone provider have reached their own written compensation agreement." 220 ILCS 5/13—510 (West 1994).

Ameritech claims that the revenue it receives from carrier access charges cannot be considered compensation for purposes of section 13—510 of the Act. According to Ameritech, carrier access rates do not compensate it for the use of its payphone facilities. We agree.

■ The provision of carrier access service is distinct from the provision of payphone facilities and services. As several witnesses acknowledged, Ameritech would receive the same carrier access fees even if it discontinued all of its payphone services. Thus, the revenue Ameritech receives for providing carrier access services cannot be considered "compensation for the use of [payphone] facilities or services." 220 ILCS 5/13—510 (West 1994). If the Commission believes that Ameritech is receiving too much revenue from its carrier access fees, those rates should be reviewed through the appropriate rate-making procedures rather than by denying Ameritech the compensation that it has a statutory right to receive.

■ The long distance companies and the Commission argue, however, that even if Ameritech is entitled to receive compensation beyond the revenue it received for carrier access services, its complaint for retroactive compensation was properly denied. According to the Commission, Ameritech's payphone services were classified as noncompetitive during the period between May 14, 1992, and April 5, 1995. As such, the rates Ameritech charged for its payphone services were subject to Commission regulation and were set by the Commission at a level that provided Ameritech with a reasonable rate of return. See *Illinois Bell Telephone Co. v. Illinois Commerce Comm'n*, 203 Ill. App. 3d 424, 561 N.E.2d 426 (1990). The Commission thus found that Ameritech had already recovered the costs associated with providing payphone services plus a reasonable rate of return. Accordingly, the Commission argues that allowing Ameritech to recover compensation as required under section 13—510 of the Act would give Ameritech an undeserved windfall.

While the effect of granting Ameritech's request for retroactive compensation may be viewed as a windfall to Ameritech, the statute requires that Ameritech receive such a windfall. The mandate of section 13—510 of the Act does not condition the payphone provider's right to receive compensation upon whether the provider is recovering the costs of providing payphone services from other sources. Accordingly, we decline the Commission's request to read an exception into section 13—510 of the Act.

■ The long distance companies and the Commission also argue

that the denial of Ameritech's claim for retroactive compensation was proper because Ameritech failed to file the complaint in a timely manner. We disagree for several reasons.

First, the statute does not contain any limitations period for requesting such compensation. Second, the long distance companies did not argue before the Commission that they had been prejudiced by Ameritech's delay. Third, at the time Ameritech filed its complaint, the Commission had not adopted any specific procedure for determining the amount of compensation to which payphone providers were entitled, and the IPPs' complaint for compensation was still pending before the Commission. Thus, in ruling on the IPPs' complaint, it was likely that the Commission would establish a procedure for resolving the issues raised by section 13—510 of the Act. It was therefore reasonable for Ameritech to await the resolution of the IPPs' complaint instead of filing a separate complaint that raised the same issues. Fourth, both the long distance companies and the Commission failed to cite any authority in support of their argument that Ameritech's complaint should be denied because it was not filed in a timely manner. Accordingly, they waived this argument on appeal. See *Pyskaty v. Oyama*, 266 Ill. App. 3d 801, 641 N.E.2d 552 (1994) (failure to support argument by citation to legal authority in brief constitutes waiver of argument). Therefore, we find that the Commission could not deny Ameritech's complaint based on Ameritech's failure to file the complaint on an earlier date.

For these reasons, we hold that the Commission erred by determining that the compensation Ameritech receives for carrier access services is also compensation for the use of its payphone facilities and services, and we hold that Ameritech's complaint was timely filed. Therefore, Ameritech is entitled to compensation beyond the revenue it received for carrier access services for the period between May 14, 1992, and April 5, 1995, as requested in its complaint. Because the Commission denied Ameritech's request for relief and thus did not determine the appropriate level of compensation, we remand for further proceedings consistent with this opinion.

■ The last issue is whether the Commission erred by finding that the tariff filing procedure is not the proper procedure for obtaining compensation pursuant to section 13—510 of the Act.

According to section 13—510 of the Act, unless the payphone provider enters a written agreement with a telecommunications carrier, the Commission has sole discretion to determine the amount of compensation to which the payphone provider is entitled. At the time Ameritech filed the tariff at issue in the instant case, the Commission had not established a procedure for making these determina-

tions. Thus, the Commission was free to decide that tariff filing is not the appropriate procedure. Accordingly, while Ameritech is entitled to compensation under section 13—510 of the Act, we affirm the Commission's finding that Ameritech's tariff was void *ab initio*. Therefore, in order to recover prospective compensation under section 13—510 of the Act and retroactive compensation from April 5, 1995, Ameritech must file a complaint with the Commission.

In its brief, Ameritech raised additional grounds for reversing the Commission's order. However, because we have reversed on the above grounds, we need not address the remaining issues.

For the forgoing reasons, the decision of the Illinois Commerce Commission is affirmed in part, reversed in part and remanded.

Affirmed in part, reversed in part and remanded.

HOLDRIDGE and SLATER, JJ., concur.